**Joan CARSTENSEN, Appellant,**

**v.**

**BRUNSWICK CORPORATION, Mercury Marine Corporation, and Sea Ray Boats, Inc., Appellees.**

**No. 94–2982.**

United States Court of Appeals,
Eighth Circuit.

Submitted Jan. 13, 1995.

Decided March 3, 1995.

R. Ben Hogan, Birmingham, AL, argued (Joseph F. Gross, Omaha, NE, on the brief), for appellant.

Daniel J. Connolly, Minneapolis, MN, argued (James Fitzmaurice, Brendan W. Randall and Kyle W. Johnson, on the brief), for appellees.

Before RICHARD S. ARNOLD, Chief Judge, ROSS, Senior Circuit Judge, and MURPHY, Circuit Judge.

DIANA E. MURPHY, Circuit Judge.

Joan Carstensen appeals the dismissal of her diversity action against the Brunswick Corporation, Mercury Marine Corporation,

---

and Sea Ray Boats, Inc. to recover damages for injuries she received when she fell out of a boat and was struck by the engine's propeller. Her complaint alleged that appellees failed to design, manufacture, or equip the boat and engine with a propeller guard.[1] The district court[2] held that Carstensen's state law tort claims were preempted by the Federal Boat Safety Act of 1971, 46 U.S.C. §§ 4301–4311 (FBSA). We affirm.

■ Carstensen argues on appeal that the FBSA preemption clause, 46 U.S.C. § 4306, does not expressly preempt her common law claims and that its savings clause, 46 U.S.C. § 4311(g), specifically preserves them. Appellees respond that the statute expressly preempts common law damage actions and that its savings clause should not be interpreted to the contrary.

The FBSA expressly states the intent of Congress to preempt state laws or regulations that are not identical to a regulation promulgated under the act:

> Unless permitted by the Secretary under section 4305 of this title, a State or political subdivision of a State may not establish, continue in effect, or enforce a law or regulation establishing a recreational vessel or associated equipment performance or other safety standard or imposing a requirement for associated equipment (except insofar as the State or political subdivision may, in the absence of the Secretary's disapproval, regulate the carrying or use of marine safety articles to meet uniquely hazardous conditions or circumstances within the State) that is not identi-

cal to a regulation prescribed under section 4302 of this title.

46 U.S.C. § 4306.

Rulemaking authority under the FBSA related to recreational vessels has been delegated to the United States Coast Guard,[3] which has specifically rejected proposed regulations requiring the use of propeller guards. On February 1, 1990, the Coast Guard adopted the recommendation of the National Boating Safety Advisory Council that the "U.S. Coast Guard should take no regulatory action to require propeller guards,"[4] and the official position that "[a]vailable propeller guard accident data do not support imposition of a regulation requiring propeller guards on motorboats." Letter from Robert T. Nelson, Rear Admiral, U.S. Coast Guard, Chief, Office of Navigation, Safety and Waterway Services to A. Newell Garden, Chairman, National Boating Safety Advisory Council 1 (Feb. 1, 1990).

■ The decision not to regulate has the same preemptive force as a decision to regulate. *See Bonito Boats, Inc. v. Thunder Craft Boats, Inc.,* 489 U.S. 141, 151–52, 109 S.Ct. 971, 977–78, 103 L.Ed.2d 118 (1989); *Transcontinental Gas Pipe Line Corp. v. State Oil & Gas Board,* 474 U.S. 409, 422, 106 S.Ct. 709, 716–17, 88 L.Ed.2d 732 (1986); *Arkansas Elec. Coop. Corp. v. Arkansas Pub. Serv. Comm'n,* 461 U.S. 375, 103 S.Ct. 1905, 76 L.Ed.2d 1 (1983). Any state law or regulation requiring manufacturers to install propeller guards would not be identical to the Coast Guard regulatory position.

As Carstensen points out, the FBSA preemption clause does not specifically refer to common law actions, but it is very broad. The clause preempts any state "law or regulation . . . imposing a requirement for associ-

1. The boat had been manufactured by Sea Ray Boats, Inc. with an engine and propeller supplied by Mercury Marine. Sea Ray Boats, Inc. and Mercury Marine are subsidiaries of the Brunswick Corporation.

2. The Honorable William G. Cambridge, United States District Judge for the District of Nebraska.

3. The FBSA provides that the Secretary of Transportation "may prescribe regulations establishing minimum safety standards for recreational vessels and associated equipment. . . ." 46 U.S.C. § 4302(a)(1). The Secretary may delegate his authority under the FBSA to "a person, pri-

vate or public agency, or organization." 46 U.S.C. § 4303(a). Pursuant to § 4303(a), the Secretary of Transportation has delegated his powers and duties under the Act to the Commandant of the Coast Guard. H.R.Rep. No. 338, 98th Cong., 1st Sess. 122–23 (1983), *reprinted in* 1983 U.S.C.C.A.N. 924, 934–35; H.R.Rep. No. 154, 100th Cong., 2d Sess. 9 (1988), *reprinted in* 1988 U.S.C.C.A.N. 2361, 2363.

4. Minutes of the 44th Meeting of the National Boating Safety Advisory Council 17–19 (Nov. 6–7, 1989).

ated equipment...." The broad language "suggests no distinction between positive enactments and common law." *Cipollone v. Liggett Group, Inc.*, 505 U.S. ——, ——, 112 S.Ct. 2608, 2620, 120 L.Ed.2d 407 (1992). It is well established that " '[state] regulation can be as effectively exerted through an award of damages as through some form of preventive relief. The obligation to pay compensation can be, indeed is designed to be, a potent method of governing conduct and controlling policy.' " *Id.* (quoting *San Diego Building Trades Council v. Garmon*, 359 U.S. 236, 247, 79 S.Ct. 773, 780–81, 3 L.Ed.2d 775 (1959)); *National Bank of Commerce v. Kimberly–Clark Corp.*, 38 F.3d 988, 990 (8th Cir.1994).

Allowing a jury to assess damages for failure to install a propeller guard would create, in effect, a state requirement that guards be installed. State damage actions based on such failure would establish a regulation "imposing a requirement for associated equipment" that is not identical to that prescribed by the Coast Guard. When Congress has drafted a specific preemption provision that "provides a 'reliable indicium of congressional intent with respect to state authority," the scope of preemption is defined by its express terms. *Cipollone*, 505 U.S. at ——, 112 S.Ct. at 2618 (1992). We conclude that the preemption clause of the FBSA expressly preempts such claims.

Carstensen argues that the savings clause in the FBSA must alter the preemption analysis. The statute's "Penalties and Injunctions" section includes a clause which provides that "[c]ompliance with this chapter or standards, regulations, or orders prescribed under this chapter does not relieve a person from liability at common law or under State law." 46 U.S.C. § 4311(g).

A savings clause should not be read to save those common law rights, "the continued existence of which would be absolutely inconsistent with the provisions of the act." *Texas & Pac. Ry. v. Abilene Cotton Oil Co.*, 204 U.S. 426, 446, 27 S.Ct. 350, 358, 51 L.Ed. 553 (1907). A general remedies savings clause "cannot be allowed to supersede the specific substantive pre-emption provision." *Morales v. Trans World Airlines, Inc.*, 504 U.S. 374, ——, 112 S.Ct. 2031, 2037, 119 L.Ed.2d 157 (1992) (finding common law claims to be preempted by the Airline Deregulation Act of 1978). Instead, interpretation of a savings clause "must be guided by the goals and policies of the Act." *International Paper Co. v. Ouellette*, 479 U.S. 481, 493, 107 S.Ct. 805, 812, 93 L.Ed.2d 883 (1987) (Clean Water Act).

The preemption clause of the FBSA specifically provides that any state requirements that differ from the federal regulations are preempted. This is consistent with the statute's goal of establishing uniform boating safety requirements.[5] The general savings clause should not be interpreted to subvert this goal. Instead, it should be read as saving only those common law claims that are not expressly preempted. Such an interpretation does not render the savings clause superfluous.

The stated purpose of the savings clause is "to assure that in a product liability suit mere compliance by a manufacturer with the minimum standards promulgated under the Act will not be a complete defense to liability." S.Rep. No. 248, 92d Cong., 1st Sess., *reprinted in* 1971 U.S.C.C.A.N. 1333, 1352. Not all common law claims have the effect of establishing a safety standard or requirement. For example, common law claims asserting liability for defectively designed products that are actually installed may not be preempted. *See, e.g., Mulhern v. Outboard Marine Corp.*, 146 Wis.2d 604, 432 N.W.2d 130 (Ct.App.1988) (claims based on defective throttle not preempted by FBSA); *Rubin v. Brutus Corp.*, 487 So.2d 360 (Fla. Dist.Ct.App.1986) (claims based on defective seat not preempted by FBSA).

Our analysis in this case is consistent with that of other courts that have considered

---

**5.** The legislative history of the preemption clause explains that

> This section provides for federal preemption in the issuance of boat and equipment safety standards. This conforms to the long history of preemption in maritime safety matters and is founded on the need for uniformity applicable

to vessels moving in interstate commerce. In this case it also assures that manufacture for the domestic trade will not involve compliance with widely varying local requirements.

S.Rep. No. 248, 92d Cong., 1st Sess., *reprinted in* 1971 U.S.C.C.A.N. 1333, 1341.

whether claims based on the failure to install propeller guards are preempted by the FBSA. *See, e.g., Shield v. Bayliner Marine Corp.,* 822 F.Supp. 81 (D.Conn.1993); *Shields v. Outboard Marine Corp.,* 776 F.Supp. 1579 (M.D.Ga.1991); *Mowery v. Mercury Marine,* 773 F.Supp. 1012 (N.D.Ohio 1991); *Farner v. Brunswick Corp.,* 239 Ill.App.3d 885, 180 Ill. Dec. 493, 607 N.E.2d 562 (1992). In *Mowery,* for example, the court concluded that a failure to install claim is "explicitly preempted by the FBSA" and that the "savings clause is inapplicable" in such cases. 773 F.Supp. at 1017. The rationale of this line of cases is more persuasive than that of the sole court that has held to the contrary. See *Moore v. Brunswick Bowling & Billiards Corp.,* 889 S.W.2d 246 (Tex.), *cert. denied,* —— U.S. ——, 115 U.S. 664, 130 L.Ed.2d 599 (1994).[6]

We conclude that Carstensen's state tort claims based on the failure to install a propeller guard are preempted by federal law and affirm their dismissal.

---

**6.** Carstensen also directs our attention to *Myrick v. Freuhauf Corp.,* 13 F.3d 1516 (11th Cir.), *cert. granted sub nom. Freightliner Corp. v. Myrick,* —— U.S. ——, 115 S.Ct. 306, 130 L.Ed.2d 218 (1994), in which the Eleventh Circuit held that common law claims based on failure to install anti-lock brakes are not preempted by the National Traffic and Motor Vehicle Safety Act (NTMVSA). *Myrick* is not dispositive here because of the distinct difference between the language of the NTMVSA preemption and savings clauses and that of the FBSA. *See id.* at 1520.