_____

No. 95-1938
_____

Brian Moe; Thomas Moe; Saundra       *
Moe,                                 *
                                     *
      Plaintiffs - Appellants,       *
                                     *   Appeal from the United States
      v.                             *   District Court for the
                                     *   District of Minnesota
MTD Products, Inc.,                  *
                                     *
      Defendant - Appellee.          *

                                _____

                    Submitted:   November 15, 1995

                       Filed:   December 27, 1995
                                _____

Before HANSEN, LAY, and MURPHY, Circuit Judges.
                                _____

MURPHY, Circuit Judge.


      This case arises from an accident in which the fingers of Brian Moe's
right hand were amputated when he reached into the grass chute of a
lawnmower manufactured by MTD Products, Inc.  He and his parents sued MTD
under several theories of recovery,[1] alleging that a safety device on the
mower was defectively designed and that MTD had failed to warn purchasers
of the design problems.  The district court granted summary judgment
dismissing all of the claims on the basis that they were preempted by the
Consumer

---

[1]The Moes pled strict liability, negligence, and breach of
the implied warranties of merchantability and fitness.

Product Safety Act (CPSA), 15 U.S.C. § 2051 et seq.[2]  We affirm in part and reverse in part.

## I.

On the morning of July 29, 1992, seventeen year old Brian Moe was mowing a neighbor's lawn using his father's walk-behind, self propelled mower.  Brian was an experienced operator of the mower, having mowed lawns with it for his family and neighbors for several years.  The mower became clogged with wet grass several times that morning, and Brian cleared it by releasing the mower's operator handle, bending over, and reaching into the side grass chute to unclog it.  He had been able to do this without injury because the mower was equipped with a safety device, called a blade brake/clutch system (BBC), that permitted the cutting blade to rotate only when the control lever on the operator handle was engaged.  The BBC was designed to stop the rotation of the cutting blade within three seconds of the release of the control lever.

When Brian released the control lever the third or fourth time the mower became clogged, the cutting blade did not stop rotating.  He did not notice that the blade had continued to rotate, and when he reached his right hand into the grass chute, the fingers were severed.  After the accident, his sisters continued the mowing job.  At one point, the cutting blade completely stopped rotating, and it was discovered that the BBC control cable had broken.  This cable connected the control lever to the blade area.  The cable appeared to have frayed and broken, strand by strand, in an area where it passed through, and rubbed against, the throttle control housing,

---

[2]In ruling from the bench, the court also expressed the view that the design defect claim could not succeed because the lawnmower had been altered, making proof of proximate causation impossible.  This claim has been described by the Moes as one for a defectively designed product actually installed, and it asserts improper design of a safety device.

2

which was a black plastic box.

Thomas Moe, Brian's father, had owned the mower for three years at the time of the accident and had repaired several of its parts. In 1991, the mower handle had broken from the base, and Thomas Moe had it reattached by a welder. The repaired handle was 1 3/8" longer than the original.

II.

The Moes claim that Brian's accident was caused by the design of the installed BBC and that it was defective because it routed the control cable in an unsafe manner, resulting in fraying. They allege that the control cable frayed because it rubbed against the plastic of the throttle control housing and because its path included several sharp turns that increased the pressure on the cable. MTD responds that the fraying was caused by the lengthening of the mower handle, which made the cable more taut and increased the stress on it.

The Moes also claim that MTD failed to warn purchasers that the BBC design would cause the cable to fray. Although the mower's grass chute had a label warning of the danger of injury to the fingers from a rotating blade, they believe that an additional label should have been placed on the mower handle warning that the cable might fray. The owner's manual instructed the owner to inspect the control cable because "[i]f the cable becomes frayed, it could cause the blade brake/clutch to operate improperly." The Moes assert that this manual information was insufficient notice of the potential hazard.

The district court held that all of the Moes' claims[3] were preempted by the CPSA. That statute established the Consumer Protection Safety Commission (CPSC), 15 U.S.C. § 2053, authorized it to promulgate federal product safety standards for various products, id. §§ 2056, 2058, and expressly preempted any non-identical state standards, id. § 2075. The Moes argue that the CPSA preemption clause does not preempt their failure to warn or design defect claims. MTD contends that the failure to warn claim is preempted by the federal statute, but agrees that the design defect claim is not. It argues that summary judgment was also appropriate on that claim, however, because of undisputed evidence that the product had been substantially altered.

III.

The CPSA expressly states the intent of Congress to preempt state safety standards or regulations that are not identical to the federal standard:

> Whenever a consumer product safety standard under this chapter is in effect and applies to a risk of injury associated with a consumer product, no State or political subdivision of a State shall have any authority either to establish or to continue in effect any provision of a safety standard or regulation which prescribes any requirements as to the performance, composition, design, finish, construction, packaging, or labeling of such product which are designed to deal with the same risk of injury associated with such consumer product, unless such requirements are identical to the requirements of the Federal standard.

15 U.S.C. § 2075(1). If a federal standard establishes a labelling

---

[3]The record indicates that the Moes also raised a claim that MTD should have installed an engine-kill system rather than the BBC. The Moes made clear at oral argument, however, that they are presently not pursuing such a claim. Since the CPSA has authorized installation of either an engine-kill system or a BBC, that claim would be preempted in any event. See footnote 4, infra.

4

requirement warning of injuries to the fingers from the mower blade, any state standard requiring different or additional warnings about the same risk of injury would thus be expressly preempted.

The statute preempts not only positive enactments of state standards, but also common law tort actions that would have the effect of creating a state standard.  Allowing a jury to assess damages for MTD's failure to place a warning label on the mower handle would create a state standard or regulation requiring such a warning.  It is well established that "[state] regulation can be as effectively exerted through an award of damages as through some form of preventive relief."  Cipollone v. Liggett Group, Inc., 112 S. Ct. 2608, 2620 (1992); Carstensen v. Brunswick Corp., 49 F.3d 430, 432 (8th Cir. 1995), cert. denied, 116 S. Ct. 182 (1995).

The CPSC created a federal safety standard for lawnmowers when it promulgated a Safety Standard for Walk-Behind Power Lawn Mowers (Mower Standard), 16 C.F.R. § 1205, as authorized by the CPSA, 15 U.S.C. § 2056. In addition to setting out performance requirements for mowers,[4] the Mower Standard requires that a warning label be placed on each mower's blade housing.  The label must contain both a written warning against blade contact injury and a depiction of a blade slicing into a hand.  16 C.F.R. § 1205.6.

The Moes' failure to warn claim suggests that MTD should have warned consumers that the BBC cable might fray.  The risk of injury contemplated by such a warning is the same as that addressed by the

---

[4]The Mower Standard requires that each mower pass a "foot probe" test, which in effect requires a protective shield extending from the blade housing.  Each mower must also have a blade control system that permits the blade to rotate only if the operator presses on a special control on the mower handle.  16 C.F.R. § 1205.5(a).  The manufacturer has an option of choosing between a BBC, similar to that in this case, or an engine-kill system, which stops the engine when a control lever is released.

5

labelling requirements in the Mower Standard -- injury to the hands by the cutting blade.  If the Moes' failure to warn claim were successful, it would create a state standard requiring additional warnings on lawn mowers or in owner manuals related to the same risk of injury addressed by the federal standard.  This claim is thus expressly preempted by the CPSA.

The Moes argue that the savings clause in the CPSA preserves their failure to warn claim, but they read the clause too broadly.  The savings clause provides that "[c]ompliance with consumer product safety rules or other rules or orders under this Act shall not relieve any person from liability at common law or under State statutory law to any other person." 15 U.S.C. § 2074(a).  The goals and policies of a statute must guide the interpretation of its savings clause.  International Paper v. Ouellette, 479 U.S. 481, 493 (1987).  A general remedies savings clause such as this "cannot be allowed to supersede the specific substantive pre-emption provision."  Morales v. Trans World Airlines, Inc., 112 S. Ct. 2031 (1992); Carstensen, 49 F.3d at 432.

One purpose of the CPSA is to "develop uniform safety standards for consumer products and to minimize conflicting State and local regulations." 15 U.S.C. § 2051(b)(3).  The statute's express preemption of mower standards that are not identical to a federal standard addressing the same risk of injury is consistent with this goal.  The savings clause should not be interpreted to subvert the preemption provision and should be read to save those claims that are not expressly preempted.  See Carstensen, 49 F.3d at 432.  The failure to warn claim is not preserved.

The Moes' defective design claim is an example of the type of

claim the savings clause preserves, however.[5]  See id.  A successful tort action based on the defective design of an installed BBC would not create a different standard for mower safety or impose additional requirements on the manufacturer.  Instead it would create an incentive for manufacturers to install a BBC that works and is properly designed, and thus ensure that the federal standard has meaning.  The Moes' defective design claim is not preempted by the CPSA and should not have been dismissed on that ground.

The question remains whether summary judgment was properly granted on the design defect claims on the alternate theory that the mower had been altered.  Summary judgment is appropriate if there are no disputed issues of material fact, and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c).  All evidence and inferences must be viewed in the light most favorable to the non-moving party.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 (1986).  We review a grant of summary judgment de novo.

MTD argues that it is entitled to summary judgment on the design claim because the alteration of the mower handle makes it impossible for the Moes to establish causation.  Minnesota law requires a plaintiff asserting any theory of products liability to show a causal link between the alleged design defect and the injury.  Bilotta v. Kelley Co., 346 N.W.2d 616, 623 n. 3 (Minn. 1984) (strict liability); Hudson v. Snyder Body, Inc., 326 N.W.2d 149, 157 (Minn. 1982) (negligence); Farr v. Armstrong Rubber Co.,

---

[5]The Moes attempt to save their failure to warn claim by framing it in terms of their design defect claim.  They argue that MTD had a duty to warn consumers that the product was designed in a manner that would cause the cable to fray.  This does not change the analysis, however, because the warnings they seek would be designed to prevent the same risk of injury as those in the federal standard.  The Moes do not suggest that the design defect creates any risk of injuries other than those from the cutting blade.

7

179 N.W.2d 64, 69 (Minn. 1970) (breach of warranty).  A plaintiff asserting strict liability must also show that the injury was not caused by mishandling of the product.  <u>Magnuson v. Rupp Mfg. Inc.</u>, 171 N.W.2d 201, 206 (Minn. 1969).[6]

The record here shows that issues of material fact exist as to whether the BBC design caused Brian's injury.  The Moes claim that the BBC control cable frayed because it was routed through the plastic control housing that rubbed against the cable and because the cable's path included significant bends.  MTD claims that the cable frayed because the mower handle was lengthened, which increased the stress on the cable.  Although it is undisputed that the mower handle was lengthened, there is a dispute whether the increased length affected the BBC cable.  The MTD expert suggests that the additional length of the mower handle "contributed to cause the cable to break or the blade brake clutch mechanism to function improperly."  (App. 148).  The Moes' expert concludes that the increased length of the mower handle did not affect the cable stress because there was still "play" in the cable.  (App. 98-99).  Summary judgment was inappropriate because of the presence of real issues of material fact.

MTD's reliance on <u>Rients v. International Harvester Co.</u>, 346 N.W.2d 359, 362 (Minn. Ct. App. 1984), <u>review denied</u> (Minn. Oct. 30, 1984), is not persuasive.  The plaintiff in <u>Rients</u> was involved in a tractor accident and alleged that the front axle attachment was defectively designed.  <u>Id.</u> Summary judgment in favor of the defendant was affirmed since the plaintiff could not prove a causal link between the design and the accident; there were many other possible causes.  Although one alternate cause was that the attachment had been significantly altered by the plaintiff, it was not the only possibility.  The tractor's brakes were worn, the

---

[6]MTD also asserted misuse and alteration of the product as an affirmative defense.

8

steering gear was broken, and other parts were not functional or were bent. Id.  In contrast, there is no dispute here that the frayed cable caused the accident, and there are only two theories about how the cable became frayed.  Based on the evidence in the record, it would not be "sheer speculation" for a jury in this case to find that the design, rather than the alteration, caused the fraying and the accident.  See id.

MTD also argues that the design defect claim cannot proceed under a strict liability theory because the plaintiffs cannot prove that the product reached them "without substantial change in the condition in which it was originally sold by the manufacturer."  Rients v. Int'l Harvester Co., 346 N.W.2d at 362 (citing McCormack v. Handscraft Co., 154 N.W.2d 488, 499 (Minn. 1967)).  It asserts that the Moes cannot meet this burden because the mower was substantially altered when the handle was lengthened, but that repair took place after the product reached the Moes.  MTD does not suggest that the mower was altered in any way before it reached them, but cites Rients in support.  The plaintiff there failed to prove his strict liability theory, but he had bought the front axle attachment as a used part at least twenty years after it was manufactured.  Here, Thomas Moe purchased the mower new.

For the reasons stated, we affirm the dismissal of the preempted claims, but reverse the dismissal of the design defect claim and remand for further proceedings consistent with this opinion.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.

9