Joseph **FRAZIER**, Plaintiff,

v.

**HECKINGERS**, and **MTD Products, Inc.**, Defendants.

No. CIV.A. 98–3256.

United States District Court, E.D. Pennsylvania.

May 23, 2000.

Mychak Geckle & Welker, P.C., Philadelphia, PA, for Plaintiff.

Pepper Hamilton, L.L.P., Philadelphia, PA, for Defendants.

## MEMORANDUM

JOYNER, District Judge.

Plaintiff has filed this action against Heckinger Stores Company[1] and MTD Products, Inc., stating four claims: two claims of negligence, one claim of "strict liability" and one claim for breach of warranty. Presently before the Court is Defendants' Motion for Summary Judgment. For the reasons that follow, the motion is granted.

### Background

The facts of the case are simple. Plaintiff, Joseph Frazier, tripped on an unidentified object while mowing his lawn with a walk-behind lawn mower on May 12, 1996. At the time that he tripped, Plaintiff was pulling back on the mower. He held on to the mower as he fell, continuing to grasp the blade control handles. During his fall, Plaintiff's left foot passed under the mower, causing the mower blade to sever his big toe. Plaintiff then brought this action against Defendants.

After the suit was filed, Plaintiff's lawn mower disappeared. The mower had been held in a storage locker in the office building of Plaintiff's counsel for approximately two years. Plaintiff's Memorandum states that "[s]ometime during the winter months of 1998 the lawn mower was stolen from Plaintiff's counsel's storage area." Plaintiff's Response to Defendants' Motion for Summary Judgment at II.C. However, Plaintiff's counsel tells a different story in a letter to Defendants' counsel. The letter states:

> [S]ometime in approximately March of 1998 the ownership of this building decided to convert the above mentioned storage areas to useable office space. All the tenants were advised to remove all of their property from the storage area. Sometime in the spring of 1998 I personally went back to the storage room assigned to my law firm. When I went in there the lawn mower was gone.

Defendants' Motion for Summary Judgment, Ex. I. Thus, it appears from this letter that the mower was not stolen, but rather removed by building management after first notifying Plaintiff's counsel.

### Discussion

#### I. LEGAL STANDARD

Summary judgment is appropriate where the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, reveal no genuine issue of material fact, and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). Our responsi-

---

1. Defendants' Notice of Removal clarifies that, although the first named Defendant is "Heckingers," the proper name for the Defendant is "Heckinger Stores Company."

bility is not to resolve disputed issues of fact, but to determine whether any factual issues exist to be tried. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–49, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). The presence of "a mere scintilla of evidence" in the nonmovant's favor will not avoid summary judgment. *Williams v. Borough of West Chester*, 891 F.2d 458, 460 (3d Cir.1989) (citing *Anderson*, 477 U.S. at 249, 106 S.Ct. 2505). Rather, we will grant summary judgment unless "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248, 106 S.Ct. 2505.

In making this determination, all of the facts must be viewed in the light most favorable to the non-moving party and all reasonable inferences must be drawn in favor of the non-moving party. *Id.* at 256, 106 S.Ct. 2505. Once the moving party has met the initial burden of demonstrating the absence of a genuine issue of material fact, the non-moving party must establish the existence of each element of its case. *J.F. Feeser, Inc. v. Serv–A–Portion, Inc.*, 909 F.2d 1524, 1531 (3d Cir.1990) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986)).

## II. FEDERAL PREEMPTION OF STATE LAW CLAIMS

■ Defendants argue that Plaintiff's claims, all of which are state law claims, are preempted by the Consumer Products Safety Act ("CPSA"), 15 U.S.C. § 2051 *et seq.* The CPSA, which has as one of its stated purposes "to minimize conflicting State and local regulations," 15 U.S.C. § 2051(b)(3), includes an explicit preemption clause. The Act states:

Whenever a consumer product safety standard under this Act is in effect and applies to a risk of injury associated with a consumer product, no State or political subdivision of a State shall have any authority either to establish or to continue in effect any provision of a safety standard or regulation which prescribes any requirements as to the performance, composition, contents, design, finish, construction, packaging, or labeling of such product which are designed to deal with the same risk of injury associated with such consumer product, unless such requirements are identical to the requirements of the Federal standard.

15 U.S.C. § 2075(a). There is a consumer product safety standard under the CPSA that applies to the risk of injury associated with walk-behind lawn mowers. *See* 16 C.F.R. § 1205.1 *et seq.* ("Safety Standard for Walk–Behind Power Lawn Mowers"). Thus, the CPSA preempts Plaintiff's case if both: (1) Plaintiff proposes safety standards that are not identical to the requirements of the Federal standard; and (2) the CPSA preemption applies to a state law damages action.

### Plaintiff's Proposed Safety Standards

Plaintiff Response identifies the following defects that Plaintiff claims existed in the lawn mower manufactured and sold by Defendants: (1) the edge of the blade and the rear of the mower deck were not separated by at least three and one half inches; (2) the rear trailing rubber shield was not rigid enough and should have been made out of a different material; (3) the lawn mower should have had a warning that specifically addressed the danger of pulling the lawn mower over one's foot. *See* Plaintiff's Response to Defendants' Motion for Summary Judgment at § II.D. In addition, Plaintiff's expert, Dr. Ali M. Sadegh, argued during his deposition that the blade stop time should have been shorter. *See* Deposition of Ali M. Sadegh at 117. The question is whether these safety standards are identical to the federal standards.

The edge of the blade and the rear of the mower deck were not separated by at least three and one half inches.

Plaintiff proposes this safety standard to prevent the entry of a foot into the mower deck area. *See* Plaintiff's Response to Defendants' Motion for Summary Judgment at § II.D. However, there is already a CPSA regulation covering the risk of entry

of body parts into the mower deck area, which requires a "foot probe" test to be done to determine whether the mower has appropriate protection from the entry of a foot into the mower deck area. *See* 16 C.F.R. § 1205.4. Plaintiff's proposed safety standard is for a fixed distance, whereas there is a federal regulation on point which requires a "foot probe" test. Thus, Plaintiff's regulation differs from the federal regulation.

Plaintiff argues that the standard set out in 16 C.F.R. § 1205.4 effectively requires "a distance of 3.15 inches ... from the edge of the shield (housing) to the tip of the blade circle." However, as Defendants point out, the regulation requires no such thing. Rather, 16 C.F.R. § 1205.4 sets out a test to be done, using a "foot probe." Defendants have provided a "CPSC and ANSI Conformance Verification," indicating that MTD Products, Inc. has performed the required test on the model in question, and that the mower passed the "foot probe" test set out in 16 C.F.R. § 1205.4. *See* Defendants' Motion for Summary Judgment, Ex. D. Plaintiff, meanwhile, has not submitted any evidence that his expert even performed this test on the same model mower used by Plaintiff. And, of course, neither party was able to perform this test on the actual mower used by Plaintiff, because that mower has been lost.

The rear trailing rubber shield was not rigid enough and should have been made out of a different material.

The rigidity of the real trailing rubber shield is covered by 16 C.F.R. § 1205.4 ("Walk-behind rotary power mower protective shields"). The regulation limits how stiff the shield can be by requiring that the shield not "stop the mower as a result of contact with the raised obstacle [that is established by the test]." Plaintiff acknowledges that his expert has not described what stiff material the shield should be made out of. *See* Plaintiff's Response at II.D. Again, Defendants have submitted evidence that the mower in question complied with the federal regulation, and Plaintiff has not offered any evi-

dence to the contrary. *See* Defendants' Motion for Summary Judgment, Ex. D. Plaintiff's proposed regulation is different from the federal regulation.

The lawn mower should have had a warning that specifically addressed the danger of pulling the lawn mower over one's foot.

Federal regulations establish the warnings to be used for walk-behind power lawn mowers. *See* 16 C.F.R. § 1205.6 ("Warning label for reel-type and rotary power mowers"). Defendants have submitted evidence that the mower in question carried these warnings, and Plaintiff has not offered any evidence to the contrary. *See* Defendants' Motion for Summary Judgment, Ex. D. Plaintiff proposes additional warnings that the mower should have carried that are not identical to the federal warnings.

The blade stop time should have been shorter.

Federal regulations require that the blade must come to a complete stop "within 3.0 seconds after release of the control." *See* 16 C.F.R. § 1205.5(a)(1)(iii). Plaintiff's expert guessed that the mower in question had a stop time of ten seconds, but he acknowledged that he performed no tests to confirm this guess. *See* Deposition of Ali M. Sadegh at 117. Defendants have submitted evidence that the mower in question complied with the federal requirement. *See* Defendants' Motion for Summary Judgment, Ex. D. Plaintiff has thus produced no evidence that the mower in question did not comply with the federal standard, and any "shorter" stop time that Plaintiff proposes necessarily is not identical to the federal regulation.

### B. CPSA Preemption of a State Law Damages Action

█ It is clear, as discussed above, that Plaintiff's proposed safety standards are not identical to on-point federal safety standards. Thus, if the preemption clause in the CPSA applies to a state law damages action, Plaintiff's case will be

preempted because the proposed requirements are not "identical to the requirements of the Federal standard." 15 U.S.C. § 2075(a).

The question of whether a federal preemption clause preempts state law damages actions was addressed by the Supreme Court in *Cipollone v. Liggett Group, Inc.,* 505 U.S. 504, 112 S.Ct. 2608, 120 L.Ed.2d 407 (1992). In *Cipollone,* the Supreme Court addressed whether the explicit preemption clause in the Federal Cigarette Labeling and Advertising Act, 15 U.S.C. § 1331 *et seq.,* precluded a state law damages action. The Court held that the preemption clause in the 1965 law did not preempt state law damages actions, because the clause contained narrow language barring only a state's requiring any "statements" in the advertising of cigarettes. *See Cipollone* at 518, 112 S.Ct. 2608. However, this clause was amended in 1969 to bar "not simply 'statements' but rather 'requirements or prohibitions ... imposed under State law.'" *Id.* at 520, 112 S.Ct. 2608. Further, the 1969 amendment "reaches beyond statements 'in the advertising' to obligations 'with respect to the advertising or promotion' of cigarettes." *Id.* This amended version of the preemption clause was found to preempt any state law damages action. The Supreme Court stated, "[t]he phrase 'no requirement or prohibition' sweeps broadly and suggests no distinction between positive enactments and common law ...." *Id.* at 521, 112 S.Ct. 2608.

The question, then, is whether the preemption clause contained in the CPSA is more like the 1965 preemption clause discussed in *Cipollone,* or the 1969 amended version of that preemption clause. The CPSA preemption clause states:

> Whenever a consumer product safety standard under this Act is in effect and applies to a risk of injury associated with a consumer product, no State or political subdivision of a State shall have any authority either to establish or to continue in effect any provision of a safety standard or regulation which prescribes any requirements as to the performance, composition, contents, design, finish, construction, packaging, or labeling of such product which are designed to deal with the same risk of injury associated with such consumer product, unless such requirements are identical to the requirements of the Federal standard.

15 U.S.C. § 2075(a). This text broadly prohibits "any provision of a safety standard or regulation which prescribes any requirements ...," a phrase that sounds distinctly parallel to the phrase "no requirement or prohibition" that led the Supreme Court to find preemption of state law damages actions in *Cipollone.* In *Cipollone* the Supreme Court cited to Black's definition of a tort as "always [involving] a violation of some duty owing to Plaintiff," Black's Law Dictionary 1489 (6th ed.1990), and stated, "common-law damages actions of the sort raised by petitioner are premised on the existence of a legal duty, and it is difficult to say that such actions do not impose 'requirements or prohibitions.'" *Cipollone* at 522, 112 S.Ct. 2608. In this case, a state law damages action would clearly "establish ... a safety standard or regulation," which would in this case be prohibited under the preemption clause of the CPSA.

■ Plaintiff points to the "Savings Clause" in the CPSA, arguing that this clause saves his claim. The "Notes of Decisions" annotations following 15 U.S.C. § 2075 point to a case from the Northern District of California that addressed this issue. The case addressed the Savings Clause in the CPSA, which reads "[c]ompliance with consumer product safety rules or other rules or orders under this chapter shall not relieve any person from liability at common law or under State statutory law to any other person." 15 U.S.C. § 2074. The Court determined that the Savings Clause could not contradict the rest of the Act, and that therefore it must only maintain those state law damages actions "whose enforcement would not result in imposition of requirements or regula-

tions with respect to a matter already being regulated by federal authorities under the CPSA." *Cortez v. MTD Prods.*, 927 F.Supp. 386, 391 (N.D.Cal.1996). The Eighth Circuit reached the same conclusion in *Moe v. MTD*, 73 F.3d 179, 182 (8th Cir.1995). The Court finds these decisions persuasive, and thus finds that the Savings Clause in the CPSA does not preserve Plaintiff's claim in this case. Plaintiff's claim would clearly "result in imposition of requirements or regulations with respect to a matter already being regulated by federal authorities under the CPSA," *Cortez* at 391, because Plaintiff proposes safety requirements to deal with risks of injury already regulated by federal regulations adopted under the CPSA. *See* 16 C.F.R. § 1205.

DEFENDANTS' OTHER ARGUMENTS FOR SUMMARY JUDGMENT

Defendants also argue that they should be granted summary judgment because: (1) Plaintiff lost the mower; (2) Plaintiff has failed to put forward appropriate evidence required for a design defect case; (3) Plaintiff failed to state a proper claim for inadequate warning under Pennsylvania law; and (4) social policy analysis, which is required in a design defect case under Pennsylvania law, weighs against finding that the mower in this case was unreasonably dangerous. *See* Defendants' Motion for Summary Judgment at 19–33. However, because the Court has found that Plaintiff's design defect claims are all preempted by the CPSA, the Court need not address these additional arguments.

### Conclusion

Plaintiff's claims are all based upon a set of alleged design defects in the mower manufactured and sold by Defendants. Plaintiff's expert witness has proposed a set of design standards for lawn mowers such as the mower used by Plaintiff. However, the risk of the injury suffered by Plaintiff is already regulated by regulations passed under the CPSA. Accordingly, the preemption clause of the CPSA preempts Plaintiff's state law damages claims.

An appropriate Order follows.

### ORDER

AND NOW, this ___ day of May, 2000, upon consideration of Defendants' Motion for Summary Judgment (Document No. 21), and the responses of the parties thereto, it is hereby ORDERED, in accordance with the foregoing memorandum, that the Motion is GRANTED. Summary Judgment shall be ENTERED in favor of Defendants.