**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**JUL 25 2000**

**PATRICK FISHER**
**Clerk**

<u>PUBLISH</u>

## UNITED STATES COURT OF APPEALS

## TENTH CIRCUIT

---

DUANE CHOATE, Individually, and
PATSY SUE MADEWELL, as
Personal Representative of the
ESTATE OF CLINTON KEITH
MADEWELL,

      Plaintiffs-Appellants,

v.

CHAMPION HOME BUILDERS
COMPANY, a Michigan corporation
doing business in the State of
Oklahoma,

      Defendant-Appellee,

HERITAGE MOBILE HOMES, INC.,
d/b/a Siloam Springs Manufactured
Home Center, an Arkansas
corporation, doing business in the
State of Oklahoma d/b/a Siloam
Springs Manufactured Home Center,

      Defendant.

Nos. 98-7190, 99-7001

---

**Appeal from the United States District Court**
**for the Eastern District of Oklahoma**
**(D.C. No. 97-CV-564-S)**

---

Tony M. Graham, Feldman, Franden, Woodard & Farris, Tulsa, Oklahoma (Jody
R. Nathan, Feldman, Franden, Woodard & Farris, Tulsa, Oklahoma, and Richard

S. Toon, The Law Office of Rich Toon, P.C., Tulsa, Oklahoma, with him on the briefs), for Plaintiffs-Appellants.

Richard C. Ford, Crowe & Dunlevy, Oklahoma City, Oklahoma (LeAnne Burnett, Crowe & Dunlevy, Oklahoma City, Oklahoma, Andrew T. Bayman and Amy M. Power, King & Spalding, Atlanta, Georgia, with him on the briefs), for Defendant-Appellee.

_____

Before **BALDOCK**, **EBEL**, and **KELLY**, Circuit Judges.

_____

**EBEL**, Circuit Judge.

_____

Plaintiffs-Appellants Duane Choate ("Choate") and Patsy Sue Madewell ("Madewell") brought this products liability action against Defendant-Appellee Champion Home Builders Company ("Champion") and Defendant Heritage Mobile Homes, Inc., d/b/a Siloam Springs Manufactured Home Center ("Heritage"), on the basis of their failure to provide a smoke detector with a battery-powered backup, or failure to warn that the hard-wired smoke detector in Duane Choate's home would not work if there was a loss of power.[1] The parties did not dispute the material facts that the smoke detector lacked both a battery-powered backup and a warning that it would not function if the power went out; however, they disagreed on whether the plaintiffs' claim was preempted by

_____

[1] A second claim brought solely against Heritage was resolved by settlement. Heritage was eventually dismissed with prejudice from the case, and is not a party to this appeal.

- 2 -

federal law. The district court granted summary judgment to Champion and partial summary judgment to Heritage on preemption grounds, finding that plaintiffs' claim was both expressly and impliedly preempted by provisions of the National Manufactured Housing Construction and Safety Standards Act of 1974, 42 U.S.C. §§ 5401-5426 ("the Manufactured Housing Act" or "the Act"). We hold that the plaintiffs' claim is neither expressly nor impliedly preempted by the Act and the regulations promulgated under it; therefore we REVERSE.

## BACKGROUND

Duane Choate purchased a Champion manufactured home[2] from Heritage in 1997. Approximately a month and a half after he purchased the home, it caught fire in the middle of the night. The fire injured Choate and severely burned Clinton Keith Madewell, who had entered the home to rescue Choate. Clinton Keith Madewell eventually died from the burns.

Choate's manufactured home contained a hard-wired smoke detector with no battery backup and no warning that it would not function if there was a loss of power.[3] According to Choate, the smoke detector did not function on the night of

---

[2]"Manufactured" homes are often referred to as "mobile" homes. The technical definition can be found at 24 C.F.R. § 3280.2.

[3]Choate's home was a Model 560. Model 560s, like other manufactured homes, can be built in accordance with either Housing and Urban Development (HUD) standards or the Uniform Building Code (UBC). A UBC Model 560 would have a battery backup in the smoke detector, whereas an HUD Model 560

(continued...)

- 3 -

the fire because the fire caused a power loss. Choate and Madewell, representative of the estate of Clinton Keith Madewell, sued Champion and Heritage on a products liability theory, alleging that the failure to provide battery-powered smoke detection in the manufactured home, or to warn that the smoke detector would not work if there was a loss of power, made the home an unreasonably dangerous defective product. Choate and Madewell presented evidence that a smoke detector with a battery backup costs about five dollars more than a smoke detector with no battery backup.

Champion and Heritage moved for summary judgment on the ground that provisions of the Manufactured Housing Act and regulations promulgated under it expressly and impliedly preempt Choate and Madewell's claim. Specifically, they pointed to the fact that HUD regulations provided for a hard-wired smoke detector to be installed in homes such as Choate's,[4] and that a preemption clause in the Manufactured Housing Act precludes states from establishing or continuing

---

[3](...continued)
would not have a battery backup. Choate's home was an HUD Model 560.

[4]The relevant HUD regulations provide that "[a]t least one smoke detector . . . shall be installed in the home," and that "[t]he required detector(s) shall be attached to an electrical outlet box and the detector connected by a permanent wiring method into a general electrical circuit." 24 C.F.R. § 3280.208(a), (d). The regulations also define a smoke detector as "[a] wall-mounted detector of the ionization chamber or photoelectric type which detects visible or invisible particles of combustion and operates from a 120V AC source of current." 24 C.F.R. § 3280.202(12)(iv).

- 4 -

in effect any standard regarding construction or safety that is not identical to the federal standard. See 42 U.S.C. §5403(d). Choate and Madewell responded that a "saving" clause in the Manufactured Housing Act at 42 U.S.C. § 5409(c) preserved their claim from preemption.

The district court agreed with Champion and Heritage that provisions of the Manufactured Housing Act preempt Choate and Madewell's claim, and granted the motion for summary judgment. Relying on cases construing similar provisions in the National Traffic and Motor Vehicle Safety Act of 1966 ("the National Traffic and Motor Vehicle Safety Act"), 80 Stat. 718, 15 U.S.C. § 1381 et. seq. (1988 ed.), the district court held that "[r]egardless of whether the preemption analysis is characterized as express . . . or implied . . ., Plaintiffs' state law claim based on Champion and Heritage's failure to install battery powered smoke detectors is preempted by federal law." See Choate v. Champion Home Builders, Co., No. 97-564-S, at 10 (E.D. Okla. Aug. 4, 1998) (internal quotation omitted). Choate and Madewell appeal, arguing that their claim is neither expressly nor impliedly preempted by the Manufactured Housing Act or the regulations promulgated under the Act.

## DISCUSSION

The district court had jurisdiction pursuant to 28 U.S.C. § 1332(a). We have jurisdiction under 28 U.S.C. § 1291.

- 5 -

We review the grant or denial of summary judgment de novo, applying the same legal standard used by the district court pursuant to Fed. R. Civ. P. 56(c). Summary judgment is appropriate if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. When applying this standard, we examine the factual record and reasonable inferences therefrom in the light most favorable to the party opposing summary judgment. If there is no genuine issue of material fact in dispute, then we next determine if the substantive law was correctly applied by the district court.

Kaul v. Stephan, 83 F.3d 1208, 1212 (10th Cir. 1996).

Congress has the power to preempt state law under Article VI of the Supremacy Clause.[5] See Meyer v. Conlon, 162 F.3d 1264, 1268 (10th Cir. 1998). "[A]n agency's preemption regulations, promulgated pursuant to Congressional authority, have the same preemptive effect as statutes." Id. at 1268. The Supreme Court has held that federal law preempts state law in three circumstances:

First, Congress can define explicitly the extent to which its enactments pre-empt state law. Pre-emption fundamentally is a question of congressional intent, and when Congress has made its intent known through explicit statutory language, the courts' task is an easy one.

Second, in the absence of explicit statutory language, state law is pre-empted where it regulates conduct in a field that Congress

---

[5]The Supremacy Clause mandates that "the Laws of the United States . . . shall be the supreme Law of the Land; and the Judges in every State shall be bound thereby, any Thing in the Constitution or Laws of any State to the Contrary notwithstanding." U.S. Const. art. VI, cl. 2.

intended the Federal Government to occupy exclusively. Such an intent may be inferred from a scheme of federal regulation . . . so pervasive as to make reasonable the inference that Congress left no room for the States to supplement it, or where an Act of Congress touch[es] a field in which the federal interest is so dominant that the federal system will be assumed to preclude enforcement of state laws on the same subject. . . . Where . . . the field which Congress is said to have pre-empted includes areas that have been traditionally occupied by the States, congressional intent to supersede state laws must be clear and manifest.

Finally, state law is pre-empted to the extent that it actually conflicts with federal law. Thus, the Court has found pre-emption where it is impossible for a private party to comply with both state and federal requirements, or where state law stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress.

English v. General Elec. Co., 496 U.S. 72, 78-79, 110 S.Ct. 2270, 2275, 110 L.Ed.2d 65 (1990) (internal quotations and citations omitted). The first category is considered "express preemption," while the second category ("occupation of the field preemption") and the third category ("conflict preemption") fall under the rubric of "implied preemption." Conflict preemption includes both situations in which "it is impossible for a private party to comply with both state and federal requirements" and situations in which state law "stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress." Id. at 79 (internal quotations omitted).

I.      Express Preemption

- 7 -

We first ask whether Choate and Madewell's claim is expressly preempted. The Manufactured Housing Act contains an express preemption provision that reads as follows:

> Whenever a Federal manufactured home construction and safety standard established under this chapter is in effect, no State or political subdivision of a State shall have any authority either to establish, or continue in effect, with respect to any manufactured home covered, any standard regarding construction or safety applicable to the same aspect of performance of such manufactured home which is not identical to the Federal manufactured home construction and safety standard.

42 U.S.C. § 5403(d). A majority of the Supreme Court has indicated, in considering similar statutory provisions in different federal statutes that use the word "requirement" instead of "standard," that obligations taking the form of common law rules might be expressly preempted by such language. See Medtronic, Inc. v. Lohr, 518 U.S. 470, 481, 502-03, 116 S.Ct. 2240, 2248, 2258-2259, 135 L.Ed.2d 700 (1996) (plurality opinion); id. at 503-04 (Breyer, J., concurring in part and concurring in judgment); id. at 509 (O'Connor, J., concurring in part and dissenting in part); Cipollone v. Liggett Group, Inc., 505 U.S. 504, 521, 112 S.Ct. 2608, 2620, 120 L.Ed.2d 407 (1992) (opinion of Stevens, J.). Thus, we conclude that the state common law product liability standard Choate and Madewell seek in their lawsuit could be construed as a state "standard" within the purview of the Act's express preemption clause.

The Manufactured Housing Act, however, also contains a saving provision that raises questions about the scope of its preemption clause. That provision, which is critical to our analysis, provides that "[c]ompliance with any Federal manufactured home construction or safety standard issued under this chapter does not exempt any person from any liability under common law." 42 U.S.C. § 5409(c).

Subsequent to the district court's ruling in this case, the Supreme Court issued a decision on preemption that is strongly instructive on the issues raised in this case. In Geier v. American Honda Motor Co., __ U.S. __, 120 S.Ct. 1913 (2000), the Supreme Court considered the effect of almost identical preemption and saving clause provisions contained in the National Traffic and Motor Vehicle Safety Act[6] on a state tort law claim. The Court, relying heavily on the saving

---

[6]The National Traffic and Motor Vehicle Safety Act's preemption provision states:

> Whenever a Federal motor vehicle safety standard established under this subchapter is in effect, no State or political subdivision of a State shall have any authority either to establish, or to continue in effect, with respect to any motor vehicle or item of motor vehicle equipment[,] any safety standard applicable to the same aspect of performance of such vehicle or item of equipment which is not identical to the Federal standard.

15 U.S.C. § 1392(d) (1988 ed.) Its saving clause states: "Compliance with any Federal motor vehicle safety standard issued under this subchapter does not exempt any person from any liability under common law." Id. § 1397(k).

clause as we do in this opinion, concluded that the state tort law claim was not

expressly preempted, reasoning as follows:

> The saving clause assumes that there are some significant number of common-law liability cases to save. And a reading of the express pre-emption provision that excludes common-law tort actions gives actual meaning to the saving clause's literal language, while leaving adequate room for state tort law to operate–for example, where federal law creates only a floor, *i.e.*, a minimum safety standard. Without the saving clause, a broad reading of the express pre-emption provision arguably might pre-empt those actions, for, as we have just mentioned, it is possible to read the pre-emption provision, standing alone, as applying to standards imposed in common-law tort actions, as well as standards contained in state legislation or regulations. And if so, it would pre-empt all nonidentical state standards established in tort actions covering the same aspect of performance as an applicable federal standard, even if the federal standard merely established a minimum standard. On that broad reading of the pre-emption clause little, if any, potential "liability at common law" would remain. And few, if any, state tort actions would remain for the saving clause to save. We have found no convincing indication that Congress wanted to pre-empt, not only state statutes and regulations, but also common-law tort actions, in such circumstances. Hence the broad reading cannot be correct. The language of the pre-emption provision permits a narrow reading that excludes common-law actions. Given the presence of the saving clause, we conclude that the pre-emption clause must be so read.

<u>Geier</u>, __ U.S. at __, 120 S.Ct. at 1918 (citations omitted). Reading the

preemption provision and the saving clause together, the Court thus held that the

preemption provision was meant expressly to preempt only state statutes and

regulations, not common-law actions.

Given the nearly identical nature of the preemption and saving clause

provisions in the National Traffic and Motor Vehicle Safety Act and the

Manufactured Housing Act, we hold, in light of Geier, that Choate and

Madewell's claim is not expressly preempted.[7]


II.     Implied Preemption

We must now determine whether Choate and Madewell's claim is impliedly

preempted.  The presence of an express preemption provision such as the one in

the Manufactured Housing Act does not, by itself, foreclose an implied

preemption analysis.  See Geier, __ U.S. at __, 120 S.Ct. at 1919 (citing

Freightliner Corp. v. Myrick, 514 U.S. 280, 288, 115 S.Ct. 1483, 1488, 131

L.Ed.2d 385 (1995)).[8]  The presence of a saving clause such as the one in the

---

[7]Our ruling on express preemption is consistent with our precedent that discusses the issue of whether certain state tort law claims are preempted under the National Traffic and Motor Vehicle Safety Act as an issue of implied, not express, preemption.  See Montag v. Honda Motor Co., 75 F.3d 1414, 1417 (10th Cir. 1996); Kitts v. General Motors Corp., 875 F.2d 787, 789 (10th Cir. 1989).

[8]In Cipollone, the Supreme Court stated that

[w]hen Congress has considered the issue of pre-emption and has included in the enacted legislation a provision explicitly addressing that issue, and when that provision provides a reliable indicium of congressional intent with respect to state authority, there is no need to infer congressional intent to pre-empt state laws from the substantive provisions of the legislation.  Such reasoning is a variant of the familiar principle of *expressio unius est exclusio alterius*: Congress' enactment of a provision defining the pre-emptive reach of a statute implies that matters beyond that reach are not pre-empted.

Cipollone, 505 U.S. at 517 (internal quotations and citations omitted).  Some

(continued...)

- 11 -

Manufactured Housing Act also does not, by itself, foreclose an implied preemption analysis. See Geier, __ U.S. at __, 120 S.Ct. at 1919 (stating that "the saving clause (like the express pre-emption provision) does *not* bar the ordinary working of conflict pre-emption principles"). As the Court stated in Geier, when reviewing the identical saving clause in the National Traffic and Motor Vehicle Safety Act:

> Nothing in the language of the saving clause suggests an intent to save state-law tort actions that conflict with federal regulations. The words "[c]ompliance" and "does not exempt" sound as if they simply bar a special kind of defense, namely, a defense that compliance with a federal standard automatically exempts a defendant from state law, whether the Federal Government meant that standard to be an absolute requirement or only a minimum one. . . . Nor does our interpretation conflict with the purpose of the saving provision, say

---

[8](...continued)
courts initially interpreted Cipollone as holding that an express preemption clause in an Act precluded *any* inquiry into implied preemption. See, e.g., Myrick v. Freuhauf Corp., 13 F.3d 1516, 1521-22 (11th Cir. 1994); see also Cleveland v. Piper Aircraft Corp., 985 F.2d 1438, 1443 (10th Cir. 1993) (stating that in Cipollone, the Court used the doctrine of *expressio unius est exclusio alterius* "to hold that implied preemption is generally inapplicable to a federal statute that contains an express preemption provision"). The Supreme Court later clarified Cipollone's holding with respect to express and implied preemption, stating: "At best, Cipollone supports an inference that an express pre-emption clause forecloses implied pre-emption; it does not establish a rule." Freightliner Corp., 514 U.S. at 289. Geier, however, goes further and suggests that the presence of an express preemption clause that proves inapplicable does not impose any "special burden" on one who then alternatively seeks to establish implied preemption. See Geier, 120 S.Ct. at 1921 ("And considerations of language, purpose, and administrative workability, together with the principles underlying this Court's preemption doctrine . . . make clear that the express pre-emption provision imposes no unusual, "special burden" against [implied] pre-emption.").

- 12 -

by rendering it ineffectual. As we have previously explained, the saving provision still makes clear that the express pre-emption provision does not of its own force pre-empt common-law tort actions. And it thereby preserves those actions that seek to establish greater safety than the minimum safety achieved by a federal regulation intended to provide a floor.

Geier, __ U.S. at __, 120 S.Ct. at 1919 (citations omitted). We therefore may reach the question of implied preemption.

Implied preemption exists when (1) state law regulates conduct in a field Congress intended the Federal Government to occupy exclusively, or (2) when state law actually conflicts with federal law. See English, 496 U.S. at 79. Champion does not argue that Congress intended for the Federal Government to occupy the field of construction and safety of manufactured homes exclusively, and the Manufactured Housing Act does not support such an assertion.

Champion does argue that a finding of conflict preemption is appropriate in this case. Conflict preemption exists in either of two situations: (1) when "it is impossible for a private party to comply with both state and federal requirements," or (2) when state law "stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress." English, 496 U.S. at 79 (internal quotations omitted).

It is not impossible to comply with both the common law products liability standard urged by Choate and Madewell and the federal standard contained in the Manufactured Housing Act. The federal standard is for a hard-wired smoke

- 13 -

detector.  Choate and Madewell assert that Oklahoma products liability law pertaining to defective and unreasonably dangerous products requires that the hard-wired smoke detector also have either a battery-powered backup or a warning that it would not work if there was a loss of power.  A manufacturer could have both and thus comply with both standards.

Thus, we must determine whether the Oklahoma standard urged by Choate and Madewell would "stand as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress."  English, 469 U.S. at 79.  We conclude that it would not.

The Manufactured Housing Act's implementing regulations specify that the test for determining whether a state action stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress is "whether the State rule can be enforced or the action taken without impairing the Federal superintendence of the manufactured home industry as established by the Act."  24 C.F.R. § 3282.11(d).  What Choate and Madewell seek in their claim would not compromise the federal superintendence of the manufactured home industry as established by the Act.  The Manufactured Housing Act's hard-wired smoke detector requirement serves only as a minimum standard for smoke detection.  For example, the HUD standard only requires "[a]t least one smoke detector [which is hard wired to the general electrical circuit]."  24 C.F.R. §

3280.208(a), (d) (emphasis added). This is clearly a minimum rather than a maximum standard, and a state standard requiring a battery-operated backup is not in any way contrary to HUD's superintendence of a federal standard calling for "at least" one hard-wired smoke detector. Champion in fact stipulated that HUD requirements and regulations do not prevent the installation of a smoke detector with a battery backup in homes such as Choate's. See Aplt. App. at 217 (deposition of James Layne Womble, page 34, lines 2-11). Choate and Madewell do not argue that manufacturers are required to install battery-powered smoke detectors *instead of* hard-wired ones; rather, they argue that Champion may be liable under state tort law for not adding a battery backup or a warning to the hard-wired smoke detector.[9] The federal superintendence of the manufactured home industry as established by the Act remains intact under Choate and Madewell's claim because the hard-wired smoke detector standard imposed under the Act remains undisturbed.

In this respect, Choate and Madewell's claim differs from the claim at issue in Geier. In Geier, the plaintiffs claimed that their 1987 Honda Accord should have been equipped with an airbag. See Geier, __ U.S. at __, 120 S.Ct. at 1917. The 1984 version of a Federal Motor Vehicle Safety Standard promulgated by the Department of Transportation under the authority of the Safety Act deliberately

---

[9]Our opinion in this case has no bearing on the merits of such a claim.

provided manufacturers with a range of choices among different passive restraint systems.  See id. at 1922.  Under the plaintiffs' claim asserted in that case, manufacturers should have used airbags instead of the other options presented.  See id. at 1925.  This would have effectively eliminated use of the other choices offered under the federal standards.  Thus, the Court found that the rule of state common law sought by the plaintiffs would have stood "as an obstacle to the accomplishment and execution of" the important identified federal objectives of having a variety and mix of passive restraint devices, and promoting a gradual passive restraint phase-in.  See id. at 1925.

The rule of law sought by Choate and Madewell, on the other hand, would not eliminate the chosen federal method of providing smoke detection in manufactured homes.  It would simply increase the effectiveness of that method.  Choate and Madewell's claim is therefore one of those actions preserved by the saving clause because it "seek[s] to establish greater safety than the minimum safety achieved by a federal regulation intended to provide a floor."  Geier, __ U.S. at __, 120 S.Ct. at 1919.

Moreover, permitting Choate and Madewell's claim to go forward would be consistent with the stated purposes of the Manufactured Housing Act.  Congress enacted the Manufactured Housing Act in 1974 "to reduce the number of personal injuries and deaths and the amount of insurance costs and property damage

- 16 -

resulting from manufactured home accidents and to improve the quality and durability of manufactured homes." 42 U.S.C. § 5401. Nothing in the "Congressional declaration of purposes" found in § 5401 suggests a purpose of providing manufacturers of mobile homes with relief from potentially higher standards derived from general state products liability law developed by state courts. The state products liability claim pursued by Choate and Madewell is intended to increase safety and reduce the number of personal injuries and deaths resulting from manufactured home accidents. It would not, as Champion asserts, result in an interpretation that would "strip [the Act] of its substance and intended efficacy."

The legislative history of the Act does not alter the analysis. The references to the Act "supersed[ing] State standards not identical to the Federal standards," S. Rep. No. 93-693 (1974), reprinted in 1974 U.S.C.C.A.N. 4273, 4279, and "preempt[ing] state law," id. at 4340, merely echo the Act and its regulations, and provide no further persuasive support for the argument that Congress wanted to preempt, not only state statutes and regulations, but also common-law tort actions. The vagueness of the legislative history on the issue further leads us to find that nothing therein should change our analysis of the relevant statute and regulations, and thus counsels us to conclude that there is no implied preemption.

"Conflict preemption requires that the state or local action be a material impediment to the federal action, or thwart[] the federal policy in a material way." Mount Olivet Cemetery Ass'n v. Salt Lake City, 164 F.3d 480, 489 (10th Cir. 1998) (internal quotations and citations omitted). There is nothing to indicate that Choate and Madewell's claim would do either; therefore we find that Choate and Madewell's claim does not "stand as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress," and is not impliedly preempted by the Manufactured Housing Act or its implementing regulations.[10]

---

[10]We note that the Manufactured Housing Act contains one additional provision not contained in the Safety Act at issue in Geier. That provision pertains to the jurisdiction of state agencies or courts under state law and provides:

> Nothing in this chapter shall prevent any State agency or court from asserting jurisdiction under State law over any manufactured home construction or safety issue with respect to which no Federal manufactured home construction and safety standard has been established pursuant to the provisions of section 5403 of this title.

42 U.S.C. § 5422(a). The legislative history also makes mention of this jurisdictional provision. See S. Rep. No. 93-693 (1974), reprinted in 1974 U.S.C.C.A.N. 4273, 4279. This provision is not triggered unless preemption, either express or implied, is found. Only after a finding of preemption would there be anything "in this chapter" that would prevent a state court from asserting jurisdiction over a safety issue under Sate law. But because we have already concluded that there is nothing "in this chapter" preventing the assertion of a claim under the Oklahoma products liability common law, there is no predicate upon which this further qualification can operate. Thus, we believe that § 5422 is not relevant to our analysis.

- 18 -

CONCLUSION

We conclude that Choate and Madewell's claim is neither expressly nor impliedly preempted by the Manufactured Housing Act or the regulations promulgated under it. We therefore REVERSE the district court's order granting summary judgment to Champion on the issue of federal preemption, and we REMAND for further proceedings consistent with this opinion.