**Thomas LEIPART, an individual; Cindy Leipart, an individual, Plaintiffs–Appellants,**

**v.**

**GUARDIAN INDUSTRIES, INC., a California corporation, aka Guardian Glass; Douglass Allred, a California corporation, form unknown; Does 1 through 100, inclusive, Defendants–Appellees.**

**No. 98–56637.**

United States Court of Appeals, Ninth Circuit.

Argued and Submitted April 4, 2000

Filed Dec. 12, 2000

Jeffrey P. Nolan, Santa Monica, California, for the appellants.

Daniel J. Stephenson, Ann Arbor, Michigan, for the appellees.

Before: CANBY, NOONAN, and W. FLETCHER, Circuit Judges.

WILLIAM A. FLETCHER, Circuit Judge:

Plaintiffs Thomas and Cindy Leipart appeal the dismissal of their state common-law tort claims against defendant Guardian Industries ("Guardian"). The district court held that their claims were pre–empted by the Consumer Product Safety Act ("CPSA"). *See* 15 U.S.C. §§ 2051–2084. We hold that plaintiffs' claims are not pre–empted, and accordingly reverse and remand for further proceedings.

I

Plaintiffs allege that, while showering, Thomas Leipart lost his footing and fell against a glass shower door manufactured by Guardian. They allege that the door broke into long, dangerous shards rather

than into small, relatively harmless pieces, and that Leipart's arm was so severely cut by the glass that he required emergency surgery. Plaintiffs brought suit in California state court based on several state common-law claims: (1) strict and negligence-based liability for design, manufacture and distribution; (2) strict liability for failure to warn; (3) negligent infliction of emotional distress; and (4) loss of consortium.

■ After removal to federal district court, all of plaintiffs' claims were dismissed under Federal Rule of Civil Procedure 12(b)(6) as pre-empted by the CPSA. For purposes of this appeal, we assume that the facts alleged in the complaint are true. We review *de novo* the district court's conclusions of law. *See Monterey Plaza Hotel, Ltd. v. Local 483*, 215 F.3d 923, 926 (9th Cir.2000); *Niehaus v. Greyhound Lines, Inc.*, 173 F.3d 1207, 1211 (9th Cir.1999).

## II

■ Federal law pre-empts state law in three circumstances:

Congress can define explicitly the extent to which its enactments pre-empt state law.... Second, in the absence of explicit statutory language, state law is pre-empted where it regulates conduct in a field that Congress intended the Federal Government to occupy exclusively.... Finally, state law is pre-empted to the extent that it actually conflicts with federal law.

*English v. General Electric Co.*, 496 U.S. 72, 79–80, 110 S.Ct. 2270, 110 L.Ed.2d 65 (1990) (citations omitted). In determining the scope of pre-emption, we are guided by two presumptions. First, "Congress does not cavalierly pre-empt state-law causes of action." *Medtronic, Inc. v. Lohr*, 518 U.S. 470, 485, 116 S.Ct. 2240, 135 L.Ed.2d 700 (1996). Second, " 'the purpose of Congress is the ultimate touchstone' in every pre-emption case." *Id.* (internal citation omitted). *See also Cipollone v. Liggett Group, Inc.*, 505 U.S. 504,

516, 112 S.Ct. 2608, 120 L.Ed.2d 407 (1992).

Congress enacted the CPSA

to protect the public against unreasonable risks of injury associated with consumer products; to assist consumers in evaluating the comparative safety of consumer products; to develop uniform safety standards for consumer products and to minimize conflicting State and local regulations; and to promote research and investigation into the causes and prevention of product-related deaths, illnesses, and injuries.

15 U.S.C. § 2051. Pursuant to the Act, the Consumer Product Safety Commission ("the Commission") has promulgated a "consumer product safety standard" requiring a glass shower door to undergo a test in which a 100–pound leather punching bag strikes the door in a prescribed manner. 16 C.F.R. § 1201.4. The door passes the test if the glass is broken and the resulting hole is smaller than a specified size; if the glass is broken and the ten largest pieces weigh less than a specified amount; or if the glass does not break at all. *Id.* § 1201.4(e)(i)-(e)(v).

The CPSA contains an express pre-emption clause:

Whenever a consumer product safety standard under this chapter is in effect and applies to a risk of injury associated with a consumer product, no State or political subdivision of a State shall have any authority either to establish or to continue in effect any provision of a safety standard or regulation which prescribes any requirements as to the performance, composition, contents, design, finish, construction, packaging, or labeling of such product which are designed to deal with the same risk of injury associated with such consumer product, unless such requirements are identical to the requirements of the Federal standard.

15 U.S.C. § 2075(a). The pre-emption clause is, however, subject to two saving clauses. The first saves non-CPSA reme-

dies when a defendant violates a safety standard under the CPSA. The second saves non-CPSA remedies when a defendant complies with a safety standard.

The first saving clause is included in § 2072. That section provides for recovery of damages, attorneys' fees, and expert witness fees for "knowing (including willful)" violations of a "consumer product safety rule . . . issued by the Commission." 15 U.S.C. § 2072(a). The saving clause specifies that other remedies, including common-law remedies, are not pre–empted by § 2072(a):

> The remedies provided for in this section shall be in addition to and not in lieu of any other remedies provided by common law or under Federal or State law.

*Id.* § 2072(c). The second is included in § 2074. It provides that common law and state statutory remedies are not pre–empted even when a defendant has complied with federal consumer product safety rules:

> Compliance with consumer product safety rules or other rules or orders under this chapter shall not relieve any person from liability at common law or under State statutory law to any other person.

*Id.* § 2074(a).

Before addressing plaintiffs' specific claims, we address a threshold question common to both saving clauses. The pre–emption clause of the CPSA specifies that a federal "safety standard" pre–empts a state "safety standard or regulation." 15 U.S.C. § 2075(a). The implementing federal regulation applicable to this case also refers to a federal "safety standard." 16 C.F.R. § 1201.1(a). However, both saving clauses refer, somewhat confusingly, not to federal "standards," but to federal "rules" and "orders." 15 U.S.C. § 2072(a), (c); § 2074(a).

■ We conclude that the difference in terminology is not material. Any other conclusion would lead to an unlikely, even absurd, result. If the word "standard" in

the pre–emption clause means something different from the words "rule" and "order" in the saving clauses, the saving clauses would have no meaning, for they could not save state laws that have been pre–empted by federal safety "standards"; they could save only state laws that have been pre–empted by federal "rules" or "orders." A more natural reading is that the words "standard," "rule," and "order" all refer to obligations imposed by regulations promulgated under the CPSA. We draw support for this conclusion from 15 U.S.C. § 2058, which, in specifying rulemaking procedures under the CPSA, refers interchangeably to a federal "safety standard" and "safety rule." *Id.* § 2058(a), (a)(5), (a)(6).

We now turn to plaintiffs' claims.

## III

### A

■ Plaintiffs assert state common-law tort claims for strict and negligence-based product liability for design, manufacture and distribution. Some of these claims are premised on a violation of a safety standard promulgated under the CPSA. A straightforward reading of the CPSA's pre–emption clause indicates, even without reference to a saving clause, that such claims are not pre–empted.

■ Section 2075(a) pre–empts state-law safety standards that deal with the "same risk of injury" as the federal standard, unless the state standards impose requirements that are "identical" to those imposed by the federal standards. It is clear that plaintiffs' state common-law tort claims for design, manufacture and distribution would impose requirements that deal with the same risk of injury—cuts from broken glass—as the federal safety standard in 16 C.F.R. § 1201. As we discuss below, we believe that the CPSA expressly pre–empts only requirements imposed by state standards or regulations, not requirements imposed by state com-

mon law. However, even if we were to assume, for the limited purpose of this argument, that the CPSA does pre–empt some common-law requirements, it clearly does not pre–empt common-law claims premised on violations of requirements imposed by federal safety standards; that is, the CPSA does not pre–empt common law claims that are premised on violations of requirements that are "identical" to those already imposed by federal standards.

This conclusion is reinforced by the saving clause contained in § 2072(c). As noted above, § 2072(a) provides a federal remedy of damages, attorneys' fees and expert witness' fees when a defendant knowingly violates a federal product standard. Section 2072(c) provides that these remedies are available "in addition" to other remedies, including state common-law remedies. To the degree that state common law provides additional remedies for violations of federal safety standards—and therefore provides additional incentives for potential defendants to comply with the federal standards—that law is not pre–empted. Because such state remedies supplement the federal remedies provided in § 2072(a), they provide additional protection for the public against "unreasonable risks of injury associated with consumer products." *Id.* § 2051(b)(1).

Moreover, state common-law remedies for other-than-knowing violations fill what would otherwise be a gap in the statutory scheme. The saving clause in § 2074(a) preserves additional state common-law remedies when there has been "compliance with consumer product safety rules." We believe it is unreasonable to construe § 2072(c) as not saving state common-law remedies for other-than-knowing violations of a CPSA safety standard when § 2074(a) explicitly saves such remedies in cases where there has been compliance with that same safety standard.

The Supreme Court addressed an analogous issue in *Medtronic*, and reached the same conclusion we reach here. The federal Medical Device Amendments of 1976 pre–empted state "requirements" that were "different from, or in addition to" any federal requirement applicable to a covered medical device. 21 U.S.C. § 360k(a). Even without the benefit of a saving clause, the Court in *Medtronic* held that state common law remedies premised on violations of the federal requirement were not pre–empted:

> Nothing in § 360k denies Florida the right to provide a traditional damages remedy for violations of common-law duties when those duties parallel federal requirements.... The presence of a damages remedy does not amount to the additional or different "requirement" that is necessary under the statute; rather, it merely provides another reason for manufacturers to comply with identical existing "requirements" under federal law.

518 U.S. at 495, 116 S.Ct. 2240. As in *Medtronic*, state common-law remedies based on a violation of a CPSA safety standard do not "amount to [an] additional or different 'requirement' "; rather, they "merely provide[ ] another reason for manufacturers to comply" with that standard. *Id.*

**B**

■ Plaintiffs do not, however, limit themselves to state common-law claims for design, manufacture and distribution that are premised on a violation of the CPSA safety standard. They also assert state common-law tort claims that potentially rely on a different (and higher) standard of care than that imposed by the applicable CPSA safety standard. Although we regard it as a close question, we hold that state common-law tort claims arising out of plaintiff Leipart's injury are not pre–empted, even where the standard of care is different from that imposed by the federal safety standard. In the words of the second saving clause, state common-law tort claims are not pre–empted even where there has been "[c]ompliance with consum-

er product safety rules" under the CPSA. 15 U.S.C. § 2074(a).

We are assisted in our analysis by the Supreme Court's decision last Term in *Geier v. American Honda Motor Co.*, 529 U.S. 1913, 120 S.Ct. 1913, 146 L.Ed.2d 914 (2000), rendered after the district court's decision in this case. In *Geier*, the Court interpreted closely analogous pre–emption and saving clauses of the National Traffic and Motor Vehicle Safety Act (NTMVSA). *See* 15 U.S.C. §§ 1392(d), 1397(k) (1988) (repealed 1994). Section 1392(d) of the NTMVSA pre–empted any state safety "standard" that was not "identical" to the federal "standard," just as § 2075(a) does. And § 1397(k) of the NTMVSA saved common law actions even when a defendant complied with a federal safety "standard," just as § 2074(a) saves common law actions when defendant complies with a federal safety "rule."

The Court in *Geier* concluded that, under the NTMVSA, a state law "standard" was not the same thing as a state common-law tort "requirement." After considering the Act's pre–emption and saving clauses together, the Court concluded that state requirements imposed under common-law tort actions were not state "standards" within the meaning of the NTMVSA, and that such tort actions were therefore not pre–empted by the text of that statute:

> [A] reading of the express pre-emption provision that excludes common-law tort actions gives actual meaning to the saving clause's literal language, while leaving room for state tort law to operate—for example, where federal law creates only a floor, i.e., a minimum safety standard.... The language of the pre-emption provision permits a narrow reading that excludes common-law actions. Given the presence of the saving clause, we conclude that the pre-emption clause must be so read.

120 S.Ct. at 1918.

The Court's textual analysis in *Geier* did not, however, complete its inquiry. The Court went on to consider whether a tort-based requirement conflicted with the overall scheme of the federal statute: "Nothing in the language of the saving clause suggests an intent to save state-law tort actions that conflict with federal regulations." *Id.* at 1919. On the facts of *Geier*, the Court concluded that a state common-law requirement of air bags conflicted with the policy behind the NTSMVA, which was to have a "variety and mix" of passive restraint systems, and to have a "gradual ... phase-in" of passive restraints. *Id.* at 1925.

█ We conclude from the Court's textual analysis of the NTSMVA in *Geier* that analogous federal safety standards promulgated under the CPSA do not pre–empt state common-law requirements. *See also Choate v. Champion Home Builders Co.*, 222 F.3d 788 (10th Cir.2000) (reaching the same conclusion in construing analogous provisions of National Manufactured Housing Construction and Safety Standards Act of 1974). But the question remains, as in *Geier*, whether such common-law requirements conflict with the statute considered as a whole. Conflict pre–emption occurs "where it is impossible for a private party to comply with both state and federal requirements, ... or where state law 'stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress.'" *English*, 496 U.S. at 79, 110 S.Ct. 2270 (quoting *Hines v. Davidowitz*, 312 U.S. 52, 67, 61 S.Ct. 399, 85 L.Ed. 581 (1941)) (citations omitted).

Guardian makes no argument in this case that it would be "impossible ... to comply" both with existing federal safety standards under the CPSA and with existing requirements under California's common law of torts. The question before us is, rather, whether California's common law "stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress."

█ The explicitly stated "purposes and objectives" of the CPSA are "to develop uniform safety *standards* and to

minimize conflicting State and local *regulations.*" 15 U.S.C. § 2051 (emphasis added). As a matter of textual analysis, we do not believe that the Leiparts' state common-law tort action interferes with the stated goals of the CPSA. The CPSA seeks to do two things. First, it seeks to achieve uniformity of safety "standards." *Id.* As the Court explained in *Geier,* "standards" do not include "requirements" imposed pursuant to a state's common law of torts. This necessarily means that tort-based requirements do not interfere with the goal of developing uniform standards. Second, the CPSA seeks to minimize conflicting state and local "regulations." *Id.* We believe that the term "regulations," as used in § 2051, is synonymous with the terms "standards," "regulations," "rules," and "orders," as used in the pre–emption and saving clauses. *See* 15 U.S.C. §§ 2075(a), 2072(c), 2074(a). That is, these terms all refer to regulations promulgated by a federal, state, or local entity pursuant to the CPSA, or pursuant to an applicable state or local statute or ordinance. Under this definition, tort-based "requirements" are not "regulations," and therefore necessarily cannot create conflicting regulations.

More broadly, we are not persuaded that state common-law tort actions conflict with the overarching goal of the CPSA to create a system in which federal standards and state common law requirements both have roles to play. As the Court stated in *Geier,* the NTSMVA created "only a floor, i.e., a minimum safety standard," above which state common law requirements were permitted to impose further duties. We believe that the same is true of the CPSA. *Cf. Choate,* 222 F.3d at 795–96. Indeed, the saving clause of § 2074(a) specifically preserves "liability at common law" from pre–emption, even when there has been "[c]ompliance with consumer product safety rules or other rules or orders under this chapter." 15 U.S.C. § 2074(a).

Finally, Guardian points to nothing unusual, or unusually burdensome, about the California common-law tort causes of action at issue in this case. The California law applicable to this case was in existence when the CPSA was enacted, and, so far as we are able to determine, is well within the normal range of state tort law. It imposes no obligations that would surprise or unduly burden a manufacturer of glass shower doors. More important, it imposes no obligations that would have surprised Congress when it drafted the CPSA and explicitly saved "liability at common law" from federal pre–emption. *Id.*

### C

We therefore conclude that plaintiffs' common-law claims for strict and negligence-based product liability for design, manufacture, and distribution are not pre–empted by the CPSA.

### IV

 Plaintiffs also assert a state common-law claim of strict liability for failure to warn of the risks associated with use of the glass shower door. Plaintiffs' claim would impose liability for failing to affix a safety warning label to the door, or to provide some other effective means of warning, and would thereby impose a safety requirement not imposed under the CPSA. As discussed above, we do not consider a tort-based warning requirement (through a warning label or otherwise) a "standard" within the meaning of the pre–emption and saving clauses of the CPSA. Thus, plaintiffs' claim can only be pre–empted if it would conflict with the Act. We hold that it does not.

We believe that it is not "impossible for a private party to comply with both state and federal requirements," and that state law does not " 'stand[ ] as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress.' " *English,* 496 U.S. at 79, 110 S.Ct. 2270 (quoting *Hines,* 312 U.S. at 67, 61 S.Ct.

399). The central question is, as it was above, whether a state common-law warning requirement conflicts with the "purposes and objectives" of the CPSA "to develop uniform safety *standards* and to minimize conflicting State and local *regulations.*" 15 U.S.C. § 2051 (emphasis added). As we concluded above, a common law warning requirement is neither a "standard" nor a "regulation" within the meaning of the CPSA and therefore neither interferes with the uniformity of standards nor creates conflicting regulations.

More broadly, a state common-law warning requirement does not conflict with the federal safety standards or the overall scheme of the CPSA. A federal standard exists under the CPSA, requiring that a label be affixed to glass shower doors, but the label cannot be fairly described as a safety warning. *See* 15 U.S.C. § 2063; 16 C.F.R. § 1201.5(a). The label must include only the name of the door's manufacturer, the date and place of manufacture, and a certification that the door complies with applicable federal standards. Our case is therefore analogous to *Freightliner Corp. v. Myrick*, 514 U.S. 280, 115 S.Ct. 1483, 131 L.Ed.2d 385 (1995), in which the Supreme Court held that absent any federal safety standard for truck braking systems, a state common-law action seeking to impose liability for a failure to install antilock braking devices did not conflict with the NTMVSA. In the Court's words, "it is not impossible for [defendants] to comply with both federal and state law because there is simply no federal standard for a private party to comply with, [and] a finding of liability against petitioners would undermine no federal objectives or purposes ... since none exist." *Id.* at 289–90, 115 S.Ct. 1483.

By contrast, our case is different from *Moe v. MTD Products, Inc.*, 73 F.3d 179 (8th Cir.1995), in which a comparable (and potentially conflicting) mechanism for protecting against a particular risk was already established under federal law. In *Moe*, plaintiff's hand had been injured by a power lawn mower. He claimed, on the basis of state common law, that there should have been a warning label on the mower's handle, even though federal safety standards already required a safety warning label on the blade housing. *See* 16 C.F.R. § 1205.6(a). The court relied on the existing federal standard to support its conclusion that a state-law safety labeling requirement was pre–empted. *Moe,* 73 F.3d at 183. However, unlike in *Moe,* there is no federal warning label standard in our case, and no conflict between a federal standard and a state common-law warning requirement.

V

Guardian concedes that plaintiffs' claims for negligent infliction of emotional distress and for loss of consortium are derivative of their other claims. Because plaintiffs' other state common-law claims survive federal pre–emption, these derivative claims also survive.

VI

For the foregoing reasons, we hold that plaintiffs' state common-law claims are not pre–empted by the CPSA. Because the district court dismissed plaintiffs' claims as pre–empted, it had no occasion to decide whether, without regard to pre–emption, they could withstand a motion to dismiss under Rule 12(b)(6). In reversing the district court's dismissal, we hold only that plaintiffs' state common-law claims are not pre–empted. We do not address the sufficiency of plaintiffs' complaint under state substantive law as to those claims.

REVERSED and REMANDED for further proceedings consistent with this opinion.