32 P.3d 424

**Amparo HERNANDEZ–GOMEZ, Plaintiff/Appellee,**

v.

**VOLKSWAGEN OF AMERICA, INC., a New Jersey corporation, and Volkswagenwerk Aktiengesellschaft, a foreign corporation, Defendants/Appellants.**

No. 2 CA–CV 98–0188.

Court of Appeals of Arizona, Division Two, Department B.

Oct. 5, 2001.

Law Office of Carter Morey, By Gregory G. Wasley, Dale Haralson, P.C., By Dale Haralson, Tucson, for Plaintiff/Appellee.

Peshkin Kotalik & Burghart, By William T. Burghart and Stephanie L. Chilton, Phoenix, for Defendants/Appellants.

## OPINION

DRUKE, J.

¶ 1 Plaintiff Amparo Hernandez–Gomez sustained severe injuries when the 1981 Volkswagen Rabbit in which she was riding as a front-seat passenger veered off the road, flipped over, and landed on its roof. Plaintiff sued Volkswagen of America, Inc., and Volkswagenwerk Aktiengesellschaft (collectively, Volkswagen), claiming that her injuries had resulted from the vehicle's negligently or defectively designed passive restraint system. The restraint system for the front-seat passenger consisted primarily of an automatic shoulder belt that moved diagonally across the passenger's chest when the door was shut. The system did not include a manual lap belt, which plaintiff asserted would have prevented her injuries.

¶ 2 After our supreme court twice decided that federal law did not preempt plaintiff's tort claim, *Hernandez–Gomez v. Leonardo*, 180 Ariz. 297, 884 P.2d 183 (1994) (*Hernandez–Gomez I*), *vacated, Volkswagen of America, Inc. v. Hernandez–Gomez*, 514 U.S. 1094, 115 S.Ct. 1819, 131 L.Ed.2d 742 (1995); *Hernandez–Gomez v. Leonardo*, 185 Ariz. 509, 917 P.2d 238 (1996) (*Hernandez–Gomez II*), the case proceeded to trial before a jury, which awarded plaintiff $3.1 million in damages. The trial court denied Volkswagen's post-trial motions, and this appeal followed. Although Volkswagen presents six issues for our consideration, we find the federal preemption issue dispositive.

¶ 3 Federal law preempts state law under the Supremacy Clause when Congress expressly so provides, the federal law so thoroughly occupies the field that it leaves no room for state law, or state law actually conflicts with federal law. *Cipollone v. Liggett Group, Inc.*, 505 U.S. 504, 112 S.Ct. 2608, 120 L.Ed.2d 407 (1992). Actual conflict oc-

curs when it is impossible to comply with both state and federal law "or where state law 'stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress.'" *Freightliner Corp. v. Myrick,* 514 U.S. 280, 287, 115 S.Ct. 1483, 1487, 131 L.Ed.2d 385, 392 (1995), *quoting Hines v. Davidowitz,* 312 U.S. 52, 67, 61 S.Ct. 399, 404, 85 L.Ed. 581, 587 (1941).

¶ 4 Volkswagen has contended from the outset that the National Traffic and Motor Vehicle Safety Act of 1966, Pub.L. 89–563, 80 Stat. 718, (Safety Act) and Federal Motor Vehicle Safety Standard 208 (FMVSS 208), which was promulgated pursuant to the Safety Act, expressly or implicitly preempt plaintiff's state tort claim. The version of FMVSS 208 applicable here allowed manufacturers to choose one of three options for a safety restraint system; generally, the first option required a "[c]omplete passive protection system," the second required a "head-on passive protection system," and the third a "lap and shoulder belt protection system with belt warning." 49 C.F.R. § 571.208, S4.1.2.1, S4.1.2.2, and S4.1.2.3 (1980) (italicizing deleted). Volkswagen chose to equip the 1981 Rabbit with an option two system, S4.1.2.2(b), which did not require a lap belt. As a result, Volkswagen has consistently argued that federal law preempted plaintiff's state tort claim that the vehicle's restraint system was negligently or defectively designed because it had no lap belt.

¶ 5 Our supreme court first rejected Volkswagen's argument in *Hernandez–Gomez I,* concluding that the "Safety Act's savings clause expresses Congress' intent to allow state common-law claims against automobile manufacturers whose safety restraint systems comply with federal minimum performance standards but are unreasonably dangerous to consumers." 180 Ariz. at 305, 884 P.2d at 191. The court found that "the savings clause explicitly manifests a congressional intent to preserve common-law tort claims." *Id.* Thus, having determined that federal law did not expressly preempt plaintiff's state tort claim and relying on *Cipollone,* the court did not address the issue of whether plaintiff's claim was implicitly preempted.

¶ 6 The court later addressed the issue, however, in *Hernandez–Gomez II,* after the United States Supreme Court granted Volkswagen's petition for certiorari in *Hernandez–Gomez I,* vacated the opinion, and remanded the case for reconsideration in light of the Court's intervening decision in *Myrick.* See *Volkswagen of America, Inc. v. Hernandez–Gomez,* 514 U.S. 1094, 115 S.Ct. 1819, 131 L.Ed.2d 742 (1995). Upon reconsideration, the Arizona Supreme Court again determined that federal law did not expressly preempt plaintiff's state tort claim.

¶ 7 Then, based on *Myrick,* the court considered whether federal law implicitly preempted plaintiff's state tort claim and found that it did not. The court first found that FMVSS 208 established only minimum equipment, not design, performance standards for frontal crash protection and, therefore, was "not a comprehensive regulation that occupies the entire field." *Hernandez–Gomez II,* 185 Ariz. at 516, 917 P.2d at 245. The court next found that, "even though S4.1.2.2(b) expressly prohibits the use of manual devices to achieve the required front-end crash protection, nothing [in FMVSS 208] prevented the use of manual devices for protection in [rollover accidents]," *id.* at 517, 917 P.2d at 246, and therefore, it was "possible for Volkswagen to both comply with federal law and be found liable in tort under the theory asserted by Plaintiff." *Id.* at 518, 917 P.2d at 247. Finally, the court found that the imposition of common-law liability for Volkswagen's failure to include lap belt protection in a rollover accident would not obstruct Congress's objectives. "Rather, the effect of common-law liability here would be to compensate Plaintiff for injuries allegedly caused by the manufacturer's choice *not* to do something allowed under the standards: install manual lap belts to provide rollover protection." *Id.* at 519, 917 P.2d at 248.

¶ 8 Thus, based on its analysis of the relevant provisions of the Safety Act and FMVSS 208, our supreme court concluded that there was "neither express nor implied preemption of Plaintiff's claim." *Id.* The court's conclusion is, of course, binding on this court, *see Myers v. Reeb,* 190 Ariz. 341, 947 P.2d 915 (App.1997), absent a subsequent

decision by the United States Supreme Court governing the same subject. *Cf. Summerfield v. Superior Court*, 144 Ariz. 467, 698 P.2d 712 (1985) (acknowledging binding authority of United States Supreme Court opinion on subject but determining Arizona Supreme Court's decision did not conflict with that opinion). In this case, that subsequent decision, *Geier v. American Honda Motor Co., Inc.*, 529 U.S. 861, 120 S.Ct. 1913, 146 L.Ed.2d 914 (2000), was rendered after we had conducted oral argument in this appeal; therefore, we requested supplemental briefing by the parties.

¶ 9 In *Geier*, the driver of a 1987 Honda Accord was seriously injured when the vehicle collided with a tree. She and her parents filed a lawsuit in a federal district court, alleging under common law that her injuries had resulted from the vehicle's negligent and defective design because it lacked a driver's side airbag. The district court dismissed the lawsuit based on express preemption, and the District of Columbia Circuit Court of Appeals affirmed but did so based on implied preemption. *Geier v. American Honda Motor Co., Inc.*, 166 F.3d 1236 (D.C.Cir.1999). Although all the Supreme Court justices agreed federal law did not expressly preempt the lawsuit, the majority held that the lawsuit "conflict[ed] with the objectives of FMVSS 208 ... and is therefore [implicitly] pre-empted by the [Safety] Act." *Geier*, 529 U.S. at 866, 120 S.Ct. at 1917, 146 L.Ed.2d at 922.

¶ 10 In so holding, the majority rejected the dissent's position that FMVSS 208 set "a minimum airbag standard." *Id.* at 874, 120 S.Ct. at 1922, 146 L.Ed.2d at 927. The Court observed that the Department of Transportation's comments accompanying the promulgation of FMVSS 208 made

> clear that the standard deliberately provided the manufacturer with a range of choices among different passive restraint devices. Those choices would bring about a mix of different devices introduced gradually over time; and FMVSS 208 would thereby lower costs, overcome technical safety problems, encourage technological development, and win widespread consumer acceptance—all of which would promote FMVSS 208's safety objectives.

*Id.* at 875, 120 S.Ct. at 1922, 146 L.Ed.2d at 927–28.

¶ 11 The Court then reviewed the history of FMVSS 208 and the considerations that had shaped the standard and determined that it "deliberately sought variety—a mix of several different passive restraint systems." *Id.* at 878, 120 S.Ct. at 1924, 146 L.Ed.2d at 930. The Court observed that FMVSS 208 did so "by setting a performance requirement for passive restraint devices and allowing manufacturers to choose among different passive restraint mechanisms, such as airbags, automatic belts, or other passive restraint technologies to satisfy that requirement." *Id.*

¶ 12 The basic question, said the Court, was "whether a common-law 'no airbag' action like the one before us actually conflicts with FMVSS 208"; the Court held that the action did. *Id.* at 874, 120 S.Ct. at 1922, 146 L.Ed.2d at 927. The Court found that the petitioners' action was based on a "claim that manufacturers had a duty to install an airbag when they manufactured the 1987 Honda Accord[,] ... [a duty that] would have presented an obstacle to the variety and mix of devices that the federal regulation sought." *Id.* at 881, 120 S.Ct. at 1925, 146 L.Ed.2d at 931–32. The Court explained that "[s]uch a state law—*i.e.*, a rule of state tort law imposing such a duty—by its terms would have required manufacturers of all similar cars to install airbags rather than other passive restraint systems, such as automatic belts or passive interiors." *Id.* at 881, 120 S.Ct. at 1925, 146 L.Ed.2d at 932. Accordingly, the Court concluded that, "[b]ecause the rule of law for which petitioners contend would have stood 'as an obstacle to the accomplishment and execution of' the important means-related federal objectives that we have just discussed, it is preempted." *Id., quoting Hines*, 312 U.S. at 67, 61 S.Ct. at 404, 85 L.Ed. at 587.

■ ¶ 13 The Court's analysis in *Geier* leads to the same conclusion here. As already noted, the applicable version of FMVSS 208 gave Volkswagen three options for equipping its 1981 Rabbit with a safety restraint system. Volkswagen chose an option two system for the front-seat passenger,

S4.1.2.2(b), which did not require a lap belt. Other options also did not require a lap belt for the front-seat passenger, such as options S4.1.2.1(a) and (c)(1) under option one. Plaintiff maintains, however, that the 1981 Rabbit was negligently or defectively designed because it did not have a passenger lap belt. But this would impose a duty on Volkswagen to include that belt in all such vehicles to avoid tort liability. Accordingly, as in *Geier*, plaintiff's common-law tort claim presents "an obstacle to the variety and mix of devices that [FMVSS 208] sought," *id.* at 881, 120 S.Ct. at 1925, 146 L.Ed.2d at 932, and is implicitly preempted.

¶ 14 Plaintiff nonetheless argues in her supplemental brief that her claim is not preempted because the 1981 Rabbit "failed to provide her as a front seat occupant with reasonable rollover crash protection." In support of her argument, she points to the following: the option Volkswagen chose applies only to frontal crashes; one of her experts testified at trial that "it was technologically feasible to add a manual lap belt to the [Rabbit's] passive shoulder belt system"; the Department of Transportation told Volkswagen, in 1974 that it could equip its vehicles with "additional safety belts" if its vehicles satisfied FMVSS 208; our supreme court observed in *Hernandez–Gomez II* that the option Volkswagen chose "did not prohibit additional, manually-activated or automatic devices to provide protection in other types of crashes, including rollovers," 185 Ariz. at 517, 917 P.2d at 246; and the Safety Act's savings clause preserves this state tort action. But, in light of *Geier*, plaintiff's argument no longer appears tenable.

¶ 15 Although the FMVSS 208 at issue here did not expressly prohibit manufacturers from adding other safety equipment to any of the available options, we read *Geier* as holding that FMVSS 208 gave manufacturers an unfettered choice among those options and precluded a common-law action requiring additional safety equipment not otherwise called for by the chosen option. And, because only one of the available options in FMVSS 208 addressed rollover crash protection, S4.1.2.1(c)(1), any other reading of *Geier* would force manufacturers to add rollover

protection to any other option they chose in order to avoid common-law liability. This would, in our opinion, pose an obstacle to alternative choices "the federal regulation sought." 529 U.S. at 881, 120 S.Ct. at 1925, 146 L.Ed.2d at 932.

¶ 16 In our view, the conclusion in *Hernandez–Gomez II* that federal law does not implicitly preempt plaintiff's state law tort claim is not compatible with *Geier*. We therefore disagree with plaintiff's assertion that *Hernandez–Gomez II* "is entirely consistent with and supported by *Geier* and remains the law of this case." And we believe the distinctions drawn in *Hernandez–Gomez II* between performance and design standards and between front-end and rollover accidents do not survive *Geier*.

¶ 17 Numerous courts have considered *Geier*'s impact on various state tort actions. Plaintiff relies on the following three cases to support her position: *Leipart v. Guardian Industries, Inc.*, 234 F.3d 1063 (9th Cir. 2000); *Harris v. Great Dane Trailers, Inc.*, 234 F.3d 398 (8th Cir.2000); and *Choate v. Champion Home Builders Co.*, 222 F.3d 788 (10th Cir.2000). Although each case discusses *Geier*, none involves FMVSS 208.

¶ 18 *Leipart* addressed whether the Consumer Product Safety Act preempted the plaintiffs' state tort claims against a glass shower door manufacturer. The court found no preemption, concluding that the Act created a minimum safety standard "above which state common law requirements were permitted to impose further duties." 234 F.3d at 1070.

¶ 19 *Harris* involved FMVSS 108, a standard promulgated under the Safety Act for trailer lamps and reflective devices. The plaintiff's claim alleged that the trailer her husband's vehicle had struck at night was defectively manufactured because the trailer's rear end did not have reflective tape. The court observed that FMVSS 108 provided that " 'each vehicle shall be equipped with *at least* the number of lamps, reflective devices, and associated equipment specified,' " but "did not *require* the use of reflective tape to make trailers more conspicuous." 234 F.3d at 401, *quoting* 49 C.F.R. § 571.108, S5.1.1 (emphasis added in *Harris* ). Based

on this observation, the court found that FMVSS 108 simply established "a minimum federal safety standard" and, thus, posed "no actual conflict between FMVSS 108 and [the plaintiff's] common law claim because the federal standard neither required nor prohibited the use of reflective tape." 234 F.3d at 401. Therefore, the court found no implied preemption.

¶ 20 The court in *Choate* used a similar analysis in finding no preemption of the plaintiffs' action against defendants for their failure to install a smoke detector with a battery-powered back-up in a manufactured home. The court noted that, under the Manufactured Housing Act, the applicable standard "only requires '(a)t least one smoke detector (which is hard wired to the general electrical circuit).'" 222 F.3d at 795, *quoting* 24 C.F.R. § 3280.208(a), (d) (emphasis added by *Choate*). "This," said the court, "is clearly a minimum rather than a maximum standard, and a state standard requiring a battery-operated backup is not in any way contrary to ... [the] federal standard calling for 'at least' one hard-wired smoke detector." 222 F.3d at 795. The court then distinguished the plaintiffs' claim from that in *Geier*, stating:

> Under the plaintiffs' claim asserted in [*Geier*], manufacturers should have used airbags instead of the other options presented. This would have effectively eliminated use of the other choices offered under the federal standards....
>
> The rule of law sought by [the plaintiffs], on the other hand, would not eliminate the chosen federal method of providing smoke detection in manufactured homes. It would simply increase the effectiveness of that method.

*Id.* at 796 (citation omitted). Other courts have reached similar conclusions in post-*Geier* cases that did not involve FMVSS 208. *See Green v. Fund Asset Management, L. P.*, 245 F.3d 214, 225 (3d Cir.2001) ("The creation of a greater protection [by the Investment Company Act of 1940] does not mean that the lesser protection is an obstacle if a complainant elects to employ it."); *Phillips v. Cricket Lighters*, 773 A.2d 802, 808 (Pa.Super.Ct.2001) (*Geier* distinguishable because

federal regulations pertaining to disposable butane lighters did not "give lighter manufacturers a choice of options").

¶ 21 In contrast, the post-*Geier* cases that specifically involve FMVSS 208 have all held, based on *Geier*, that the federal standard implicitly preempted the plaintiff's claims. Representative is *Hurley v. Motor Coach Industries, Inc.*, 222 F.3d 377 (7th Cir.2000), *cert. denied*, 531 U.S. 1148, 121 S.Ct. 1087, 148 L.Ed.2d 962 (2001). There, a bus driver suffered severe injuries when the bus collided with a double trailer. He and his wife sued the bus manufacturer, claiming the bus was unreasonably dangerous because it only had a two-point seat belt and should have had, among other things, a three-point seat belt and an airbag. The district court found the plaintiffs' lawsuit preempted and the Seventh Circuit Court of Appeals affirmed. That court first commented: "Aside from the fact that [the plaintiffs'] claim concerns buses and Geier's claim concerned cars, it is hard to see any significant difference between the two situations ... [because the] applicable standard for buses ... is found [in FMVSS 208]." *Id.* at 381. After the court noted that regulatory section S4.4.3. 1 provided that buses of a certain weight " 'shall comply with the requirements of S4.4.2. 1 or S4.4.2. 2,' " the court observed: "That 'or' is critical, since S4.4.2.1 calls for a 'complete passenger protection system' for the driver ... [and] S4.4.2. 2 requires only a seat belt assembly." 222 F.3d at 381. The court thus concluded that, like in *Geier*, the decision of the National Highway Transportation and Safety Board "to leave options open to bus manufacturers was made with specific policy objectives in mind. [The plaintiffs'] suit, if successful, would under mine that policy objective and is therefore preempted." *Id.* at 382. *See also James v. Mazda Motor Corp.*, 222 F.3d 1323 (11th Cir.2000) (FMVSS 208 preempts state tort claim that lap belt in 1994 Mazda Protegé was defectively designed), *cert. denied*, 532 U.S. 921, 121 S.Ct. 1358, 149 L.Ed.2d 287 (2001).

¶ 22 Accordingly, *Geier* compels us to conclude that federal law implicitly preempts plaintiff's state tort claim that the 1981 Rabbit was negligently or defectively designed.

We therefore vacate the judgment entered against Volkswagen.

FLÓREZ and PELANDER, JJ., concurring.